GARY M. RESTAINO
United States Attorney
District of Arizona
TRACY VAN BUSKIRK
Arizona State Bar No. 022097
ALANNA R. KENNEDY
Arizona State Bar No. 034257
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: vinnie.lichvar@usdoj.gov
Email: tracy.van.buskirk@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-23-08043-001-PCT-DLR |
|---|---|
| Plaintiff, | |
| vs. | **NOTICE OF INTENT TO USE EXPERT TESTIMONY RE: SEROLOGY AND DNA EVIDENCE** |
| Preston Henry Tolth, | |
| Defendant. | |

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and Federal Rules of Evidence 702, 703, 704, 705, and 1006, the government provides notice that the following witness will give testimony that may be construed as falling within the purview of these rules. This expert will offer opinion testimony based upon his training, experience, and education as set forth in his curriculum vitae (CV). To the extent he has authored a report or recorded his actions in case notes, his testimony is expected to be consistent with that report and case notes and to include all facts, observations, and conclusions therein. The government reserves the right to offer additional testimony by this expert, and for the expert to amend his opinion by considering additional information perceived by or made known to him before or during trial.

**I.    Expert**

1. <u>Alan M. Giusti, Retired Forensic Examiner: DNA and Serology</u>

The United States intends to offer the expert opinions of Alan M. Giusti from the Federal Bureau of Investigation (FBI) DNA Casework Unit (DCU) regarding DNA evidence that was tested in this case. [Laboratory Reports dated May 17, 2022.][1]. Mr. Giusti's most recent CV was previously disclosed to the defense.

**A.     Expected Testimony**

Mr. Giusti will explain how evidence is inventoried, stored and tested at the FBI Laboratory. He will explain the steps he took after he was assigned evidence to analyze. As the assigned Forensic Examiner, he reviewed the evidence and developed the examination plan. After Mr. Giusti developed the examination plan, biologists processed the items under Mr. Giusti's direction.

Mr. Giusti will provide general background information regarding forensic DNA testing and will describe/define deoxyribonucleic acid (DNA), how DNA varies from person to person, how DNA may or may not transfer from its original source to another person and or object, and what factors may affect the quality and/or quantity of DNA detected. He will testify that when evidence is received at the FBI Laboratory for DNA analysis, biologists process the evidence in accordance with the examination plan and Standard Operating Procedures of such tests, the results of which are then reviewed by the Forensic Examiner assigned to the case, to ensure no additional testing is needed.

Mr. Giusti will explain the sequence of testing that items go through at the FBI lab and how that sequence may impact testing in the DNA lab.

Mr. Giusti will provide his expert opinion that from the samples submitted to him for analysis, some DNA profiles were recovered, as more specifically outlined below. Mr. Giusti will describe the processes used to recover those profiles, which include

---

[1] He may also reference a lab report by Sherri Fentriss dated August 13, 2022.

collection, extraction, quantitation, amplification, development of the DNA profiles, and interpretation. He will also describe the individualizing characteristics used to conduct a DNA analysis—i.e., short tandem repeats, which are the basis for how DNA typing is performed at the FBI lab, and the possible outcomes of a DNA examination. He will explain how a DNA profile is interpreted, what factors may affect such interpretation, and the process for determining the number of contributors to an evidentiary profile.

Mr. Giusti determined that the DNA profiles developed in this case were suitable for comparison and compared these DNA profiles and, if necessary, calculated statistics to support any associations made under the requirements of the applicable Quality Assurance Manual and Standard Operating Procedures in place at the time at the FBI Laboratory; his conclusions were then documented in a written report. He will describe how such comparisons were performed and what possible conclusions may be reached in performing forensic DNA examinations, and how those conclusions are reported in accordance with the United States Department of Justice Uniform Language for Testimony and Reports.[2] In this case, Mr. Giusti and other members of the FBI DCU examined a number of items, including, but not limited to:

- Buccal sample from Preston Tolth;
- Buccal sample from Cecelia Curley aka Cecilia Begay;
- Shirt from next to washing machine at 33 B County Road 51;
- Pants from next to washing machine at 33 B County Road 51;
- Underwear from next to washing machine at 33 B County Road 51;

Mr. Giusti will testify regarding the examinations that were conducted on these items. He will also testify about the results of these examinations, and what the results do and do not mean. The results of these examinations are specifically described in his laboratory report

---

[2] *See* Department of Justice Uniform Language for Testimony and Reports. https://www.justice.gov/olp/uniform-language-testimony-and-reports.

and the laboratory notes. Mr. Giusti's report was administratively and technically reviewed.

By way of example, Mr. Giusti will testify that blood was identified on the shirt, and pants, and blood was indicated on the underwear described above. He will explain what parts of clothing are tested and why. In this instance, he will testify that because blood was identified or indicated on these pieces of clothing, they were tested for DNA. Mr. Giusti will explain the results of this testing which are included in his laboratory report.

For all of the items tested, Mr. Giusti will testify that the steps involved for DNA analysis often begin with serology testing. Biologists test samples for the presence of blood or semen, using generally accepted tests. The evidence is first visualized for the presence of stains. If a stain is seen, the serologist tests the stain, by collecting it with a swab and then adding the chemicals used for the presumptive test. These presumptive tests are very sensitive for the possible presence of blood. Thus, even if a sample is potentially positive for blood, DNA may not be able to be identified because there may be insufficient cellular material.

Mr. Giusti will testify some samples do not undergo any serology, including such things as guns, clothing, and known buccal swabs. In these cases, the first step is not serological testing, but rather collection. Generally, the collection step, as the name implies, is the attempt to collect cellular material from evidence. Collection of stains from evidentiary samples may include swabbing or cutting the item and preparing it for the next steps (i.e., a gun might be swabbed, portions of fabric might be cut and saved, and portions of swabs might be cut). In the collection process, biologists label each tube with a unique barcode, which is used to track chain of custody throughout the examination process and is used by various instruments for tracking purposes throughout processing.

After items are prepared for DNA testing and labeled with a unique barcode, the next step is extraction. The biologist adds chemicals to break open the cells containing DNA. The barcoded tubes are scanned and placed into a robot, which washes away all

cellular debris from the samples, resulting in a liquid DNA extract. A control sample, called a reagent blank, is included in this stage. This is a quality assurance protocol that enables the Forensic Examiner to independently ensure the integrity of the DNA extraction reagents and all reagents used throughout the remainder of processing, regardless of whether he is physically present for this step.

Mr. Giusti will testify that the next step is quantitation, to determine the amount of DNA present. In this step, biologists prepare the deck of a liquid-handling robot by scanning and placing barcoded sample tubes, filling reservoirs with the appropriate reagents, and providing a sample plate (also called a tray) that is also electronically tracked by barcode. The robot prepares the quantitation sample plate, and a biologist moves the barcoded plate to the instrument that performs the quantitation test. The quantitation instrument uses a polymerase chain reaction (PCR) to measure how much DNA is present. The data is forwarded to the Forensic Examiner for both quality assurance purposes and to prepare the samples for the next step in the process.

The next step is amplification, where millions of identical copies are made of the DNA sections of interest for forensic DNA analysis. Biologists prepare the samples for amplification, similar to the process used in quantitation, which generates a barcoded amplification plate, to which some of the DNA is added. The amplification plate is moved to the instrument that performs the amplification.

Once amplification is complete, biologists remove the amplification plate from the instrument and prepare it for the final step in DNA processing, separation (capillary electrophoresis). The amplification plate is moved to another liquid-handling robot for the creation of a barcoded daughter plate (or separation plate). The separation plate is created with capillary electrophoresis chemicals and the amplified product from the amplification plate. Biologists place the prepared barcoded separation plate onto an instrument for denaturation (heating and cooling). Then the separation plate is placed on an instrument that separates out the DNA fragments by size, making it possible to visualize the DNA

profile in a way conducive to data interpretation. Following the separation process, biologists upload the raw data produced by the instrument to the network for Mr. Giusti to access and analyze with the assistance of a software program. Each sample has a file and is imported by Mr. Giusti into analysis software: GeneMapper ID-X. Mr. Giusti analyzes and interprets the data with the assistance of the software program, and authors a report with his conclusions.

Much of the above steps involve batch runs, allowing multiple samples to be processed by the lab at the same time, all as set forth in lab protocols and as generally accepted in the scientific community. Controls and quality assurance measures are employed to include negative controls, blank controls, positive controls, and measuring ladders all as set forth in the quality assurance manuals and standard operating procedures.

While DNA typing of evidentiary samples does not identify the type of cellular material (e.g., blood, saliva, sweat), reasonable inferences can be made as to the cellular identity. For example, an item that has tested presumptively for blood and where the DNA is identified as coming from a single source may have come from the blood. If it did not come from the blood, then one would question, "where did it come from?" and "where is the DNA from the blood?" Mr. Giusti will also testify that the DNA testing used in the FBI lab is human specific.

Mr. Giusti will testify as to both the statistical and non-statistical implications of the data in this case. To determine the likelihood ratios in this case, Mr. Giusti used the probabilistic genotyping software program called STRmix™. He will explain that the DNA profile(s) developed in this case were imported into the STRmix™ software, which calculates a statistical value called a "likelihood ratio."[3] For an inclusion, the likelihood

---

[3] A likelihood ratio (LR) is a statistic for the comparison of the probability of the evidence (E), given two competing propositions. The inclusionary proposition (H1), includes the person of interest and, for mixed samples, known and/or unknown, unrelated individuals. The total count of individuals included in the proposition is equal to the number of

ratio describes how much more likely it is to observe the DNA results obtained from the item of evidence if the person of interest is a contributor to the DNA profile, rather than if an unknown, unrelated person is a contributor to the DNA profile. He will further explain that the FBI Laboratory uses a qualitative verbal scale to describe the strength of support that likelihood ratio provides to the conclusion. He may explain that the Scientific Working Group on DNA Analysis Methods (SWGDAM) recommends these supplementary verbal qualifiers, which are reflected in the FBI Standard Operating Procedures.[4] Mr. Giusti may also explain that the STRmix™ software has been thoroughly validated, both developmentally by the manufacturer and internally by the FBI Laboratory prior to its use in forensic casework, and the software is used widely within the forensic community which means that numerous laboratories have tested the STRmix probabilistic genotyping software and found it to reliably produce accurate results. In addition, he may testify that the use of STRmix™ has been subject to extensive peer-reviewed publications. He may testify that the internal parameters and the protocol for using STRmix™ were developed based upon the FBI Laboratory's internal validation studies and can be found in the FBI Laboratory Procedures. Mr. Giusti will testify that he used STRmix™ in accordance with those procedures, which was verified by another qualified Forensic Examiner during the technical review process.

Further, Mr. Giusti will testify about kinship comparison. The DNA profiles obtained from Items 3(1) and 3(10) (shirt), Items 4(1) and 4(7) (pants) and Item 5(3) (underwear) were mixtures, and thus, not suitable for kinship comparison. While the DNA

---

contributors interpreted to be in the sample. The exclusionary proposition (H2) generally consists of unknown, unrelated individuals, equaling the total number of contributors interpreted to be in the sample. *See Department of Justice Uniform Language for Testimony and Reports for Forensic Autosomal DNA Examinations Using Probabilistic Genotypic Systems. December 12, 2022.*

[4] Recommendations of the SWGDAM Ad Hoc Working Group on Genotyping Results Reported as Likelihood Ratios. https://www.swgdam.org/publications.

profile for Item 5(1) derived from a single male source. Therefore, the DNA profile from victim's sister was not used for comparison but was retained in a national database for missing people.

### B. Bases and Reasons

Mr. Giusti's opinions are based on his personal examination of the results, as well as his training, education, experience, and expertise in Forensic Serology and as a DNA Examiner. Mr. Giusti's expert forensic opinions, and the bases for those opinions, are guided by Standard Operating Procedures and applicable Quality Assurance Manual and set forth more fully in his report. Mr. Giusti may also rely on peer-reviewed literature, presentations given and attended, and continuing education to provide context to the DNA results—e.g., transfer, persistence, and recovery of DNA profiles on items of evidence.

### C. Qualifications Including Publications

Mr. Giusti served as a Physical Scientist, Chemist and Forensic Examiner at the FBI Laboratory in Quantico, Virginia. He joined the lab in 1988, but began working in the field of DNA testing in 1982 at the Lifecodes Corporation. Mr. Giusti graduated with a Bachelor of Science degree in Molecular Biophysics and Biochemistry from Yale University in 1982, obtained a Master of Science degree in Forensic Science from University of New Haven in 1996 and a Master of Science degree in Biodefense from George Mason University in 2011. His experience, training, and education are further detailed in his curriculum vitae (CV), which was previously disclosed. Mr. Giusti has not authored any publications the last ten years.

### D. Prior Testimony

Mr. Giusti's CV details his expert testimony experience over the last four years, to include testifying in twelve cases. During his career, Mr. Giusti testified as an expert in DNA analysis approximately 94 times and 42 times as an expert in forensic serology.

Alan M. Giusti
FBI DCU (Retired)

ALAN M. GIUSTI
4/10/2024

Respectfully submitted this 10th day of April, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/ Tracy Van Buskirk
TRACY VAN BUSKIRK
ALANNA R. KENNEDY
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants: James Rael and Jane L. McClellan, *Attorneys for Defendant Preston Henry Tolth.*

9